**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BERNARD B. IDLISAN,**

                                        **Plaintiff,**

        **vs.**                                                    **1:12-CV-1787**
                                                                        **(MAD/CFH)**
**NEW YORK STATE DEPARTMENT OF**
**TAX AND FINANCE,**


                                        **Defendant.**
_____

**BERNARD B. IDLISAN,**

                                        **Plaintiff,**

        **vs.**                                                    **5:12-CV-1790**
                                                                        **(MAD/TWD)**
**SUNY UPSTATE MEDICAL UNIVERSITY,**


                                        **Defendant.**
_____


**APPEARANCES:**                              **OF COUNSEL:**

**BERNARD B. IDLISAN**
1402 Jefferson Avenue
1st Floor
Brooklyn, New York 11237
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**              **HEATHER R. RUBINSTEIN, ESQ.**
**STATE ATTORNEY GENERAL**             Assistant Attorney General
The Capitol
Albany, New York 12224
Attorneys for Defendant
SUNY Upstate Medical University




**OFFICE OF THE NEW YORK**              **ADELE M. TAYLOR-SCOTT, ESQ.**

**STATE ATTORNEY GENERAL**        Assistant Attorney General

The Capitol

Albany, New York 12224

Attorneys for Defendant

New York State Department of

Tax and Finance

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced these actions on December 5, 2012, alleging employment

discrimination on the basis of his national origin and race. Plaintiff alleges that the defendants'

refusal to hire him violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

("Title VII").[1] Currently pending before the Court are Plaintiff's motions for summary judgment

and defendant New York State Department of Tax and Finance's ("NYSDTF") cross-motion for

summary judgment. For the reasons set forth below, Plaintiff's motions for summary judgment

are denied, and NYSDTF's cross-motion for summary judgment is granted.

## II. BACKGROUND

The facts set forth herein are derived from the pleadings, properly supported and

uncontested statements of material fact, affidavits, and other admissible evidence in the record.

Local Rule 7.1(3) provides as follows:

---

[1] In addition to the two instant actions, Plaintiff has filed at least four other employment
discrimination claims in federal court based upon nearly identical allegations. *See Idlisan v.
North Shore Long Island Jewish Health Sys. Inc.*, No. 13 Civ. 2345, 2014 WL 2157540 (E.D.N.Y.
May 23, 2014) (granting the defendant's motion to dismiss for failure to state a claim); *Idlisan v.
N.Y.C. Health and Hosps. Corp.*, No. 12 Civ. 9163, 2013 WL 6049076 (S.D.N.Y. Nov. 15, 2013)
(same); *Idlisan v. Mount Sinai Med. Ctr.*, No. 12 Civ. 8935 (S.D.N.Y. filed Dec. 6, 2012)
(summary judgment motion pending); *Idlisan v. Cornell Univ. Weill Med. Coll.*, No. 13 Civ. 1556
(S.D.N.Y. filed Mar. 5, 2013) (settled).

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. <u>Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.</u>
. . .
The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. <u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.</u>

L.R. 7.1 (emphasis in original); *see also* Fed. R. Civ. P. 56(c), (e).[2]

"A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see also Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (per curiam) (accepting as true material facts contained in unopposed local rule statement of material facts); *Betlewicz v. Division of New York State Police*, No. 1:12–cv–1158, 2014 WL 859247, *1 n.3 (N.D.N.Y. Mar. 5, 2014) (same). "A nonmovant cannot raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of knowledge and information in part because discovery allows the party

---

[2] Other district courts in this circuit have adopted similar local rules governing statements of material facts, which are commonly referred to as Rule 56.1 statements.

opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them." *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De–Mar Food Serv. Inc.*, No. 06 Civ. 2142, 2007 WL 4302514, \*4 (S.D.N.Y. Dec. 7, 2007); *see Ezagui v. City of New York*, 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010) (deeming statements in moving party's statement of material facts admitted where opposing party responded with assertions that it denied knowledge and information sufficient to form a belief as to the truth of the allegations); *AFL Fresh & Frozen Fruits & Vegetables*, 2007 WL 4302514, at \*4 ("unsupported denials, without more, cannot create disputes of material fact").  "In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." *T.Y.*, 584 F.3d at 418 (citations omitted).  However, "'[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.'" *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001)).  Moreover, "[c]onclusions of law in a Local Rule 7.1 Statement, even when unopposed, are not deemed admitted." *Krause v. CSX Transp.*, No. 1:11-CV-0098, 2013 WL 6163990, \*1 n.1 (N.D.N.Y. Nov. 20, 2013).

    In the present matters, Defendant SUNY Upstate Medical University ("SUNY Upstate") failed to file a responsive statement of material facts pursuant to Local Rule 7.1, and Defendant NYSDTF failed to properly contest numerous facts set forth in Plaintiff's Local Rule 7.1 statement by denying information sufficient to form a belief or referring to certain documents as the best evidence of an asserted fact.  Similarly, Plaintiff failed to properly contest certain facts set forth in Defendant NYSDTF's Local Rule 7.1 statement in support of its cross-motion for

summary judgment. As such, the Court may treat those uncontested facts as admitted. The Court

has reviewed the supporting evidence for each of the facts claimed to be undisputed, and to the

extent they are properly supported by evidence in the record, those facts are consequently deemed

admitted.

## A.    Common Facts

Plaintiff is a United States citizen and was, at all times relevant to the instant actions, a

resident of Brooklyn, New York. Plaintiff's nation of origin is the Philippines, and he of the

Asian race. Plaintiff suffers from severe triple vessel heart disease and is, by virtue of this

disability, qualified for employment consideration under the New York Civil Service Law §§ 55-

a, 55-b. Plaintiff's cardiologist certified him as job ready and likely to succeed in performing

clerical duties. Plaintiff has prior work experience in clerical positions, and met the minimum

qualifications for entry-level clerical positions with New York State.

## B.    12-cv-1787

Plaintiff passed the New York State civil service examination with a ninety percent rating

for Beginning Clerical Worker. On May 9, 2011, Plaintiff applied for a clerical position with

NYSDTF. NYSDTF had no entry-level clerical positions to be filled at the time of Plaintiff's

application. After receiving no response to his application, Plaintiff sent a follow-up inquiry on

August 2, 2011. In or about March 2012, five temporary Store Clerk I positions opened in

Albany, New York, which NYSDTF filled with applicants who lived in or around Albany.

Plaintiff's application was not forwarded for consideration in connection with these temporary

positions because he did not reside within the Albany area.

Plaintiff did not receive a response to his August 2011 follow-up inquiry and on March 5,

2012, he filed a formal complaint with the New York State Division of Human Rights

("NYSDHR"). On April 9, 2012, NYSDTF responded by letter to Plaintiff's complaint, in which it acknowledged receipt of his employment application and stated that Plaintiff met the minimum qualifications for entry-level clerical positions such as Clerk I and Calculations Clerk I. The letter further stated that these titles were not in high demand at NYSDTF and that it did not have such opportunities at the time of Plaintiff's application or since. Moreover, the letter stated that most of NYSDTF's entry-level positions for which Plaintiff was qualified were located in Albany, New York. Ultimately, the letter asserted that NYSDTF "did not refuse to hire [Plaintiff]. We have reduced our workforce and hirings have and will continue to be very limited due to the state's current fiscal constraints. Clerical positions are not in high demand in our Department."

On August, 24, 2012, Plaintiff was issued a determination and order from NYSDHR, in which it found that there was no probable cause to believe that NYSDTF has engaged in unlawful discrimination. NYSDHR found that NYSDTF did not hire Plaintiff for legitimate business reasons associated with the lack of vacancies in clerical positions. NYSDHR further found that no entry-level clerical positions were filled at NYSDTF during 2011, and in 2012 NYSDTF hired five temporary Store Clerk I positions in Albany, New York, which is an entry-level clerical position classified under the Beginning Clerical Worker examination. NYSDHR also found that NYSDTF did not consider Plaintiff for the temporary positions in Albany in 2012, because Plaintiff resided in Brooklyn and did not indicate a desire to relocate to Albany. Finally, NYSDHR found that NYSDTF employs persons of varying races and national origins, including at least four Asian Clerks, three of whom are from the Pacific Islands area. Plaintiff thereafter sent the Equal Opportunity Employment Commission ("EEOC") a request for review of NYSDHR's final determination with respect to NYSDTF, and on October 23, 2012, EEOC adopted NYSDHR's findings and issued Plaintiff a right to sue letter.

**C.      12-cv-1790**

Plaintiff passed the New York State civil service examination with ratings of eighty-five,

eighty, and ninety percent for Hospital Patient Services Clerk I, Nursing Station Services Clerk I,

and Beginning Clerical Worker, respectively.  Plaintiff has experience as a clerk in a hospital

setting, working as a Medical Clerk and later as a Records Officer at the Philippines Children

Medical Center for eight years between 1986 and 1994.

Plaintiff applied for a total of thirty-four clerk positions at SUNY Upstate during the

period from February 2011 through January 2012.  None of the positions were offered to Plaintiff.

At the time of Plaintiff's applications, Heather Baldwin (now known as Heather Baldwin-Stewart)

was the Human Resources Recruiter to whom Plaintiff sent his applications.  Ms. Baldwin called

Plaintiff to inform him that his application would be referred to a hiring manager for

consideration.

On March 5, 2012, Plaintiff filed a formal discrimination complaint against SUNY

Upstate with NYSDHR.  On April 17, 2012, SUNY Upstate responded to Plaintiff's complaint

and stated, among other things:

> A review of [Plaintiff's] employment application reveals that he has
> not worked in a hospital setting since 1994, over 18 years ago.  His
> work experience in the past 10 years has consisted of employment
> as a front desk clerk for 6 months in 2009, a front desk clerk for 3
> months in 2010, and, beginning in August, 2010, on a temporary
> basis, he has been employed by the Board of Elections in the
> position of an Information Clerk directing voters to the correct
> election districts.  Each applicant hired by SUNY Upstate for each
> of the positions [Plaintiff] has applied for is more qualified than
> [Plaintiff].

On April 23, 2012, while NYSDHR's investigation was pending, SUNY Upstate sent an email

inviting Plaintiff to report for an interview, which was scheduled for May 4.  This interview was

cancelled by Plaintiff on April 27 without explanation.

In a June 28, 2012 letter, NYSDHR stated that it had reviewed the applications and resumes of the successful candidates for the clerical positions Plaintiff had applied for and that of the thirty-two successful candidates, twenty-two were white, eight were Black/African American, and two were Hispanic. On August 1, 2012, NYSDHR found no probable cause that SUNY Upstate had engaged in discriminatory conduct. Specifically, NYSDHR found that "[a] review of the applications and/or resumes of the successful candidates showed that it was reasonable for [SUNY Upstate] to deem that these candidates were as qualified as, or better qualified than, [Plaintiff], based on qualifications, experience, or status as an internal transfer." Plaintiff thereafter sent the EEOC a request for review of NYSDHR's final determination with respect to his complaint against SUNY Upstate, and on October 26, 2012, EEOC adopted NYSDHR's findings and issued Plaintiff a right to sue letter.

### III. DISCUSSION

**A.** **Summary Judgment Standard**

A court may grant a motion for summary judgment only if it "determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the

nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## B. Summary Judgment Standards for Employment Discrimination Cases

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "because direct evidence of an employer's discriminatory intent is rare and 'must often be inferred from circumstantial evidence,'" *Serby v. New York City Dep't of Educ.*, No. 09-CV-2727, 2012 WL 928194, *5 (E.D.N.Y. Mar. 19, 2012) (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006)). However, "'[s]ummary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to other areas of litigation.'" *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 Fed. Appx. 413, 415 (2d Cir. 2011) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), superseded by statute on other grounds as stated in *Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006)). Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.

2001)). Furthermore, "[e]ven in the discrimination context . . . a plaintiff must provide more than

conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137

(citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)). A "nonmoving party 'must offer some

hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys v. City of*

*New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of New York*, 132 F.3d 145,

149 (2d Cir. 1998)). "If the evidence [presented by the non-moving party] is merely colorable, or

is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). The Second Circuit has held that:

> In discrimination cases, the inquiry into whether the plaintiff's sex
> (or race, etc.) caused the conduct at issue often requires an
> assessment of individuals' motivations and state of mind, matters
> that call for a sparing use of the summary judgment device because
> of juries' special advantages over judges in this area. Nonetheless,
> an employment discrimination plaintiff faced with a properly
> supported summary judgment motion must do more than simply
> show that there is some metaphysical doubt as to the material facts.
> She must come forth with evidence sufficient to allow a reasonable
> jury to find in her favor.

*Brown v. Henderson*, 257 F.3d 246, 251-52 (2d Cir. 2001) (citations and quotations omitted).

"[S]ummary judgment may not be granted simply because the court believes that the

plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a

lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly

tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden*

*Sys. Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted). "Nonetheless, when an employer

provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely

conclusory allegations of discrimination, the Court may conclude that no material issue of fact

exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of*

*Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citation omitted); *see also Stern v. Trs. of*

*Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997) (same); *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d

372, 375 (2d Cir. 1995) (same).

**C.      The *McDonnell Douglas* Standard**

Under Title VII, it is "an unlawful employment practice for an employer to fail or refuse

to hire [ ] any individual [ ] because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e. Plaintiff's Title VII discrimination claims are evaluated pursuant to

the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802-03 (1973). *Kirkland v. Cablevision Systems*, --- F.3d — , 2014 WL 3686090, *1 (2d Cir.

2014). To state a prima facie case of discrimination, a plaintiff must proffer evidence that (1) he

belongs to a protected group; (2) he was qualified for his position; (3) his employer took an

adverse action against him; and (4) the adverse action occurred in circumstances giving rise to an

inference of race discrimination. *Id.*

> Under *McDonnell Douglas*, the plaintiff bears the initial burden of
> establishing a prima facie case of discrimination. 411 U.S. at 802,
> 93 S.Ct. 1817. If the plaintiff does so, the burden shifts to the
> defendant to articulate "some legitimate, nondiscriminatory reason"
> for its action. *Id.* Once such a reason is provided, the plaintiff can
> no longer rely on the prima facie case, but may still prevail if she
> can show that the employer's determination was in fact the result of
> discrimination.

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). To rebut the articulated

justification for the adverse action, "the plaintiff must show both that the reason was false, and

that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4

(1993) (internal quotations omitted). "[T]he [employee's] admissible evidence must show

circumstances that would be sufficient to permit a rational finder of fact to infer that the

[employer's] employment decision was more likely than not based in whole or in part on

discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quotation and citation

omitted).  This burden-shifting analysis informs the ultimate determination of whether the

evidence reasonably supports an inference of the facts plaintiff must prove.  *James v. New York*

*Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

**D.      Analysis**

Applying these standards to the instant matters, the Court concludes that Plaintiff's

motions for summary judgment must be denied, and NYSDTF's motion for summary judgment

must be granted.  The Court will assume, without deciding, that Plaintiff can satisfy the first three

elements of a prima facie case of discrimination.   However, Plaintiff cannot make out a prima

facie discrimination claim because he has not made any showing that any adverse treatment he

sustained was because of his Asian descent or Filipino national origin.

In both of these cases, Plaintiff claims that defendants

> did not consider me for employment . . . because of my Race
> (Asian) and National Origin (Philippines).  Defendant[s] could infer
> from the resume I submitted along with my application documents
> that my National Origin is Philippines.  The Philippine Island is
> geographically located in Asia, therefore, I identified myself as
> Asian by race.  Asians, by definition, are persons having origin in
> any of the original people of the Far East, including the Philippine
> Islands.  There is a misconception that people coming from the
> Asian countries in general, and Philippines in particular, are not-
> well versed [sic] in English – meaning we could not communicate
> effectively using the English language. . . .  We are sometimes
> being ridiculed for our accents when conversing with other people
> using the English language.  Another misconception that is
> prevalent among Asians is that we are poorly educated which
> caused us to be stereotyped when it comes to hiring.  A stereotype
> is a thought that may be adopted about specific types of individuals
> or certain ways of doing things, but that belief may or may not
> accurately reflect reality.  Because of these misconceptions, I was
> not given the opportunity to be hired by the [defendants].

-12-

Case No. 12-cv-1790, Dkt. No. 36 at 8; *see also* Case No. 12-cv-1787, Dkt. No. 39 at 7.[3] These

speculative assertions are insufficient to satisfy Plaintiff's initial burden. Plaintiff states that

defendants could infer his race and/or national origin, but presents no evidence that such an

inference was actually made, or was even plausible. In fact, defendant SUNY Upstate

specifically disputes that its employees knew Plaintiff's race and/or national origin. In a sworn

affidavit, Heather Baldwin-Stewart, who was a Recruiter in the Recruitment and Appointments

Division of the SUNY Upstate Human Resources Department, states that she "was unaware of

[Plaintiff's] race and nationality during this application process – which is not information

disclosed in the resume he submitted or is it information requested in the application of

employment he field with SUNY Upstate." Case No. 12-cv-1790, Dkt. No. 39-2 ¶ 5. Plaintiff

also asserts that certain stereotypes or misconceptions exist regarding Asians, in general, and

Filipinos, in particular, but proffers no evidence to suggest that any of the defendants' employees

actually harbored such notions. In sum, the Court agrees with defendant SUNY Upstate:

> Plaintiff does not allege that Defendant gave non-minority
> applicants preferential treatment, or that any of Defendant's
> employees made comments or took actions that could give rise to an
> inference of discriminatory animus. Rather, Plaintiff expresses his
> own personal belief, in a conclusory manner, that Defendant's
> decision not to hire him was based on his race/ethnicity. But this is
> bald speculation.

Case No. 12-cv-1790, Dkt. No. 39-1 at 5.

Although an inference of discrimination can arise where a plaintiff of one race or national

origin is treated less favorably than a comparable employee of another race or national origin, the

comparable individual must be "similarly situated in all material respects." *See, e.g.*, *Graham v.*

---

[3] Citations to page numbers of documents identified by docket entry number are to the
page numbers assigned by the Court's electronic filing system.

*Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).  Plaintiff has not proffered any evidence to demonstrate that he was similarly situated in all material respects to any of the other applicants for the positions he sought with either defendant.  To the contrary, defendant NYSDTF asserts that it hired individuals who were located in the Albany area and that Plaintiff's application was not considered because of his Brooklyn residence.  As such, he was not similarly situated to any of the NYSDTF successful applicants.  As to SUNY Upstate, it asserts that each of the applicants it hired were more qualified that Plaintiff and, as discussed further below, Plaintiff has not presented competent evidence to rebut this distinguishing feature.

With respect to defendant SUNY Upstate, Plaintiff asserts that certain alleged inconsistencies in versions of a chart produced by SUNY Upstate showing the hiring status of the thirty-two positions he applied for gives rise to an inference of discrimination.  According to Plaintiff, "[b]ased on the[se] inconsistencies, assumptions can be made that Defendant is trying to hide something to get rid of any unlawful acts of discrimination."  Case No. 12-cv-1790, Dkt. No. 36 at 26.  As an initial matter, the precise nature of these alleged inconsistencies is not clear to the Court, nor is it clear whether they are, in fact, material inconsistencies or merely different versions of the same chart generated at different points in time.  In any event, assuming there are material inconsistencies, Plaintiff's bald assertion that "assumptions can be made" is simply more speculative hypothesizing and not the type of direct or circumstantial evidence necessary to prevail on summary judgment.

Moreover, even if Plaintiff could make out a prima facie case, his discrimination claims could not withstand scrutiny at the third step of the *McDonnell Douglas* analysis because defendants have each offered a legitimate, nondiscriminatory reason for not hiring Plaintiff, and Plaintiff has produced no evidence whatsoever to demonstrate that these reasons were pretextual.

-14-

In fact, despite having he opportunity to conduct discovery, it appears that Plaintiff has not submitted any new evidence that was not available to him prior to the filing of these suits. NYSDTF asserts that it had no openings for clerical positions in 2011 and that it did not consider Plaintiff for any of the Albany-based temporary positions in 2012 because of Plaintiff's Brooklyn residence. In response, Plaintiff argues, that "[a]n applicant cannot just be rejected for consideration just because his residence or address is not within the boundaries of the employer. The issue of where an applicant lives is irrelevant during the application process." Case No. 12-cv-1787, Dkt. No. 39 at 5. Plaintiff offers no factual support for this assertion, such as evidence of NYSDTF's hiring procedures with respect to its consideration of an applicants residency. *Cf.* Case No. 12-cv-1787, Dkt. No. 45-4 ¶ 13 (sworn affidavit from NYSDTF employee stating that "[i]n accordance with standard [NYSDTF] personnel procedures, Mr. Idlisan's application would not have been forwarded to the hiring unit in Albany for the Store Clerk I position because he resided outside the geographic location of the job"). Plaintiff goes on to argue that residency requirements are unconstitutional equal protection violations, which is not an issue before the Court. Case No. 12-cv-1787, Dkt. No. 39 at 5; *but see id.* at 19 (Plaintiff arguing that "[a]lthough residency requirements may well be constitutional, they are arguably bad policy and an unfair restriction placed upon applicants or employees"). In any event, the role of the Court is not to substitute its judgment for that of the employer. An employer may decline to hire a prospective employee for a good reason, a bad reason, or no reason at all, so long as the employer was not motivated by impermissible considerations.

SUNY Upstate asserts that it did not hire Plaintiff for any of the thirty-two positions it filled during the relevant period because Plaintiff was less qualified than each of the successful candidates. *See* Case No. 12-cv-1790, Dkt. No. 39-2 ¶ 4. Plaintiff has adduced no evidence from

which a reasonable juror could conclude that this reason was pretextual. Plaintiff's only argument

in this regard is a speculative hypothetical: "With more than seventeen (17) years work

experience, eight (8) years of which were directly performed in a hospital-related environment,

how can Defendant justify its claim that other applicants were more qualified than myself?" Case

No. 12-cv-1790, Dkt. No. 36 at 19-20. Ultimately, Plaintiff appears to concede that defendant

SUNY Upstate's nondiscriminatory reason for declining to hire him was not pretextual:

"Undisputed evidence established that Defendant did not hire Plaintiff because of his lack of

qualifications and it hired applications more qualified that Plaintiff." Case No. 12-cv-1790, Dkt.

No. 36 at 13. The Court agrees.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment in Case No. 12-cv-1790 (Dkt. No.

36) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment in Case No. 12-cv-1787 (Dkt. No.

39) is **DENIED**; and the Court further

**ORDERS** that defendant NYSDTF's cross-motion for summary judgment in Case No. 12-

cv-1787 (Dkt. No. 45) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of defendant NYSDTF

in Case No. 12-cv-1787 and close that case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  August 7, 2014
            Albany, New York

Mae A. D'Agostino
U.S. District Judge